HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUSTIN FRANKS,

    Plaintiff,

v.

THE NIELSEN COMPANY (US), LLC; GRACENOTE, INC.; JOHN DOES 1-10,

    Defendants.

No. 3:23-cv-06150-TMC

**DEFENDANTS THE NIELSEN COMPANY (US), LLC AND GRACENOTE, INC.'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
MAY 31. 2024

## I. INTRODUCTION

Plaintiff Justin Franks ("Plaintiff") asserts claims of race discrimination and retaliation under various statutes relating to his former employment with The Nielsen Company (US), LLC and Gracenote, Inc. (collectively, "Defendants"). However, Plaintiff cannot resolve his claims in this—or any—Court. That is because at his time of hire in 2015, Plaintiff agreed to be bound by Defendants' Arbitration Agreement (the "Agreement"), which requires Plaintiff to arbitrate the claims he alleges in his Second Amended Complaint ("SAC"). The arbitration clause at issue is fair and enforceable, and Plaintiff is contractually required to arbitrate his claims against

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 1 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

both Gracenote and Nielsen rather than litigating in court. Accordingly, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, this Court should stay the instant action and compel arbitration consistent with the parties' Agreement.

Alternatively, Defendants move to dismiss Plaintiff's race discrimination (Count VII) and retaliation (Count VIII) claims under the California Fair Employment and Housing Act with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6), because Plaintiff failed to plead facts to support that California law has any application to any timely allegations in his SAC.

## II. BACKGROUND

### A.  Procedural History

On December 12, 2023, Plaintiff filed a Complaint in the United States District Court for the Western District of Washington. (Dkt. 1.) On February 16, 2024, Defendants moved to dismiss Counts V (race discrimination under California's Fair Employment and Housing Act ("FEHA")) and VI (retaliation under FEHA) of the Complaint. (Dkt. 13.) On March 8, 2024, Plaintiff filed his First Amended Complaint ("FAC"). (Dkt. 15.) On April 2, 2024, Plaintiff filed his SAC. (Dkt. 21.) Plaintiff's SAC alleges eight counts against Defendants: (1) racial discrimination under 42 U.S.C. § 1981; (2) retaliation under 24 U.S.C. § 1981; (3) race discrimination under Title VII; (4) retaliation under Title VII; (5) race discrimination under the Washington Law Against Discrimination; (6) retaliation under the Washington Law Against Discrimination; (7) race discrimination under California's FEHA; and (8) retaliation under the FEHA. (*See* Plaintiff's SAC.)

### B.  Plaintiff's Allegations

Plaintiff includes more than 100 paragraphs in his SAC, which after amending his complaint twice, s*till* mostly consists of narrative stories dating back to 2015 that bear no

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 2 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

obvious relevance to Plaintiff's legal claims. The allegations most relevant to the instant motion are summarized below:

In 2015, Plaintiff received and accepted an offer to join Gracenote as a manager. (SAC ¶ 7.) In 2017, Gracenote was acquired by Nielsen, a Delaware corporation. (*Id*. ¶ 10.) Plaintiff was promoted to "Director" sometime in 2017 after the Nielsen-Gracenote merger was completed. (*Id.* ¶¶ 14, 15.) Plaintiff realized this role was a demotion. (*Id*. ¶ 15.) Nielsen's Chief Technology Officer and his direct report assigned Plaintiff "low-level tasks" like increasing the variety of snacks available in the office, setting up conference rooms, and facilitating a paint job for an executive's office. (*Id*. ¶¶ 16, 17.) Plaintiff continued to work on "low-level tasks" even after he began reporting to California-based Tricia Higgins. (*Id*. ¶ 17.) In 2019, Plaintiff moved from California to Washington and has lived there since. (SAC ¶¶ 6, 92, 100.) Plaintiff alleges that his manager until May 2022 was located in California and "engaged in conduct that adversely affected Plaintiff there" without pointing to any example of discriminatory conduct that was not present prior to his 2019 move. (*Id*. ¶¶ 92, 100.) Defendants, via CTO Adam Levy and Chief Diversity Officer Sandra Sims-Williams, informed Plaintiff that his position was being eliminated, thus ending his employment, on March 21, 2023. (*Id.* ¶¶ 33, 35, 50.)

Plaintiff thereafter filed a complaint of discrimination on November 21, 2023 with the California Department of Fair Employment and Housing ("DFEH"), which issued him a right-to-sue notice dated November 30, 2023. (*Id.* ¶¶ 98, 106.)

C.      **Plaintiff's Agreement to Binding Arbitration**

In 2015, as part of his onboarding with Gracenote in California, Plaintiff signed a host of new employee documents such as his offer letter, his job description, and for relevant purposes here, an Arbitration Agreement requiring him to submit all employment-related

DEFENDANTS' MOTION TO COMPEL
ARBITRATION, OR IN THE ALTERNATIVE,
MOTION TO DISMISS
Page 3 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

claims he may have with Gracenote[1] to final, binding, arbitration. (Declaration of Kelli Dawson, ("Dawson Decl.") ¶ 8, Ex. A.)

In relevant part, the Arbitration Agreement states:

> The Company and the undersigned employee hereby agree that any dispute with any party (including the Company's affiliates, successors, predecessors, contractors, employees and agents) that may arise from the employee's employment with the Company or the termination of the employee's employment with the Company must be submitted for resolution by mandatory, binding arbitration.

(*Id.*, Ex. A.)

### D. Plaintiff Did Not Respond to Defendants' Request that He Arbitrate His Claims

On April 15, 2024, Defendants' counsel emailed Plaintiff's counsel a copy of the Arbitration Agreement Plaintiff signed and asked whether Plaintiff would agree to dismiss his case in this Court and make a demand for arbitration. (Declaration of Cardelle Spangler ("Spangler Decl."), ¶ 3.) Plaintiff's counsel did not respond. (Spangler Decl., ¶ 4.) Defendants therefore bring the instant motion.

## III. LEGAL STANDARDS

### A. Motion to Compel Arbitration Standard

By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a

---

[1] As Plaintiff correctly alleges in his SAC, Nielsen acquired Gracenote in 2017. Nielsen thereafter owned 100% of Gracenote, Inc.'s stock and thus became a successor to the Arbitration Agreement.

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 4 - 3:23-cv-06150

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." (*Id.*); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ([Section 4 of the FAA] "requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement.")

Courts look to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)); *Yakima Cnty. v. Yakima Cnty. L. Enf't Officers Guild*, 157 Wn. App. 304, 325, 237 P.3d 316, 327 (Div. 3 2010) ("[Courts] apply ordinary state contract law principles when [they] pass on the validity of an agreement to arbitrate.").

### B. Motion to Dismiss Under FRCP 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 5 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

## IV. LEGAL ARGUMENT

Federal policy strongly favors arbitration. *See generally New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019). The Federal Arbitration Act ("FAA") provides, in relevant part:

> A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

(9 U.S.C. § 2.)

The FAA applies to all contracts "evidencing a transaction involving commerce." (*Id*.) The burden to show that the FAA applies is minimal: "The United States Supreme Court has determined that the phrase 'involving commerce' in the FAA is the functional equivalent of the term 'affecting commerce,' which is a term of art that ordinarily signals the broadest permissible exercise of Congress' commerce clause power." *Shepard v. Edward Mackay Enters., Inc.*, 148 Cal. App. 4th 1092, 1097 (2007) (citing *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 55 (2003) and *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 268–69 (1995)). The phrase is to be interpreted broadly. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 268 (1995). There can be no dispute that Plaintiff's employment with Defendants, out of which arose the agreement to arbitrate his claims in this case, affected interstate commerce to fall under the FAA. Gracenote is a world leader in entertainment and data services. It provides music, video, and sports metadata and automatic content recognition technologies to entertainment services and companies throughout the United States. (Dawson Decl., ¶ 3.) Nielsen is also a world leader in data and media analytics, providing services to companies across the United States. (Dawson Decl., ¶ 4.) *See generally Basura v. U.S. Home Corp.*, 98

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 6 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Cal. App. 4th 1205, 1214 (2002), *as modified* (June 27, 2002) (concluding the parties' agreements involved interstate commerce and were thus governed by the FAA where the defendant engaged in marketing and advertising activities throughout the country using interstate media).

The only question, then, is whether the arbitration agreement between Plaintiff and Defendants is enforceable under the applicable "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." *Boardman*, 822 F.3d at 1018. As set forth more fully below, whether the Court looks to the law of California, the state in which the arbitration is to take place, or Washington law, the state in which the action is currently pending, the result is the same: the agreement is enforceable and this Court should compel arbitration.

### A. The Arbitration Agreement is Enforceable Under California and Washington Law

California law should govern this Agreement because Plaintiff was employed in California, signed the agreement while he was physically present in California, and because the Agreement calls for the arbitration to take place in California. However, whether California law or Washington law governs the Agreement, it is enforceable, and this Court should compel Plaintiff to arbitrate his claims.

#### 1. Under California Law, Plaintiff Should be Compelled to Arbitrate His Claims

Arbitration agreements are valid, irrevocable, and enforceable, except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under California law, an arbitration agreement may only be invalidated for the same reasons as other contracts, such as unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 98 (2000) (citations and quotations omitted). Arbitration agreements are clearly

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 7 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

enforceable—and not unconscionable—if they meet the standard set forth by the California Supreme Court in *Armendariz. See Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1469–70 (2013), *as modified* (Oct. 2, 2013) (reversing trial court's decision denying former employer's motion to compel arbitration, reasoning that the agreement was not unconscionable pursuant to *Armendariz*); *see also Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (2016) (affirming the Court of Appeal's judgment enforcing the arbitration agreement and finding the agreement was not unconscionable). To be enforceable, an employment arbitration agreement must: (1) be mutual in its obligations; (2) provide for a neutral arbitrator; (3) contain a provision for adequate discovery; (4) contain no limitations on statutory remedies; (5) require the arbitrator to issue a written arbitration award setting forth the essential findings and conclusions on which the award is based; and (6) provide that no costs unique to arbitration will be incurred by the employee. *Armendariz*, 24 Cal 4th at 83. As shown below, the Arbitration Agreement meets all of these factors and is therefore binding and enforceable.

### a. The Arbitration Agreement is Mutual

*Armendariz* requires that an employment arbitration agreement have some "modicum of bilaterality" to avoid substantive unconscionability. *Armendariz*, 24 Cal. 4th at 116-17. A "modicum of bilaterality" exists when both the employer and the employee are bound to submit their claims to arbitration, subject to the same rules and procedures and the same advantages and disadvantages. *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, 725 (2003). The Arbitration Agreement meets this requirement. It states, in relevant part: "it is in the mutual interest of everyone involved to handle [disputes] pursuant to binding arbitration," "[b]y entering into this Arbitration of Disputes Agreement, the Company and the undersigned Employee are **waiving the right to a jury trial** for all employment-related disputes," and "[b]oth the Company and the employee shall be precluded from bringing or raising in court or

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 8 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

another forum any dispute that was or could have been submitted to binding arbitration." (Dawson Decl., Ex. A.) (emphasis in original). The Arbitration Agreement is therefore bilateral because "both the employer and the employee are bound to submit their claims to arbitration, subject to the same rules and procedures and the same advantages and disadvantages." *Fittante*, 105 Cal. App. 4th at 725.

### b. The Arbitration Agreement Provides for a Mutually Selected, Neutral Arbitrator

The Arbitration Agreement expressly provides that "[t]he arbitration shall be conducted before a neutral arbitrator selected by both parties in accordance with Section 1281.6 from (1) the American Arbitration Association Labor and Employment Panel; (2) Judicial Arbitration and Mediation Services, Inc. ("JAMS"); or (3) Action Dispute Resolution Services ("ADR")." (Dawson Decl., Ex. A.) Therefore, the Arbitration Agreement clearly meets the second *Armendariz* requirement for a neutral arbitrator.

### c. The Arbitration Agreement Ensures Adequate Discovery

The Arbitration Agreement provides the parties equal opportunity to engage in meaningful and adequate discovery. Not only does the Agreement explicitly state "[t]he parties will be permitted to conduct discovery as provided by Section 1283.05," but it also states "[b]inding arbitration under this Agreement shall be conducted in Alameda County in accordance with the California Arbitration Act, Code of Civil Procedures sections 1280, *et. seq*. Courts have found an arbitration agreement meets this element if it incorporates the California Arbitration Act. *See Armendariz*, 24 Cal. 4th at 93 ("because the agreement incorporated the California Arbitration Act (CAA), adequate discovery, pursuant to Code of Civil Procedure section 1283.05, was available.") Even further, here, the Arbitration Agreement specifically references discovery provisions of the California Code of Civil Procedure. As such, the

DEFENDANTS' MOTION TO COMPEL
ARBITRATION, OR IN THE ALTERNATIVE,
MOTION TO DISMISS
Page 9 - 3:23-cv-06150

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Arbitration Agreement provides the parties with reasonable and ample means to engage in discovery.

### d. The Arbitration Agreement Provides for All Remedies Otherwise Available in Court

The Arbitration Agreement does not limit the types of relief the arbitrator is permitted to grant, and this element is therefore met. Various courts, including the United States Supreme Court, have held that if the agreement does not restrict the types of relief available—even in the absence of specific language stating that all types of relief are available—this element is met. *See, e.g.*, *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1481–82 (D.C. Cir. 1997) (citing *Gilmer*, 500 U.S. 20, at 32.) ("Gilmer's objection that arbitration did not provide for equitable relief was rejected because the NYSE Rules did not restrict the types of relief available.")

### e. The Arbitration Agreement Requires a Written Award

The Arbitration Agreement also satisfies the *Armendariz* requirement of a written award. The Arbitration Agreement expressly states "[t]he arbitrator shall, within thirty days after the conclusion of the arbitration, issue a written opinion setting forth the factual and legal findings and conclusions on which his or her decision is based." (Dawson Decl., Ex. A.) Thus, this *Armendariz* element is met.

### f. The Arbitration Agreement Does Not Require Plaintiff to Pay Unreasonable Costs or Arbitrator's Fees

California law provides that mandatory arbitration agreements cannot force an employee to "pay unreasonable costs and arbitration fees." *Armendariz, supra*, at 107. The *Armendariz* requirement is satisfied here. The Arbitration Agreement explicitly states: "[w]here required by law, the Company shall pay all additional costs peculiar to the arbitration to the extent such costs would not otherwise be incurred in a court proceeding (for instance, the Company will, if required, pay the arbitrator's fees to the extent it exceeds Court filing fees)."

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 10 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(Dawson Decl., Ex. A). Therefore, the final *Armendariz* requirement is met here.

### 2. The Arbitration Agreement is Enforceable Under Washington Law

Washington law recognizes a strong public policy favoring arbitration. *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 810 (2009). "In determining whether to enforce an arbitration provision, [courts] engage in a limited two-part inquiry: first, whether the arbitration agreement is valid, and if so, whether the agreement encompasses the claims asserted." *Wiese v. Cach, LLC*, 189 Wn. App. 466, 474 (Div. 1 2015); *see also Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc.*, 148 Wn. App. 400, 402 (Div. 1 2009). "Once it is determined that both criteria have been met, the court's authority is substantially constrained," and it must order arbitration. *Heights at Issaquah Ridge, Owners Ass'n*, 148 Wn. App. at 402; RCW 7.04A.070 ("Unless the court finds that there is no enforceable agreement to arbitrate, it shall order the parties to arbitrate.") The party seeking to enforce an arbitration agreement must only prove the existence of a contract and the other party's objective manifestation of the intent to be bound. *Rushing v. Franklin Hills Health & Rehabilitation Center*, No. 11-2-04875-1, 2015 WL 13203892, at *4 (Wash.Super. Mar. 03, 2015) (quoting *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 944 (1982)). Thus, on a motion to compel arbitration, the inquiry for this Court is: (1) whether an agreement to arbitrate exists, and (2) whether the parties agreed to arbitrate the claims at issue. *See* RCW 7.04A.070(2)-(3).

### a. An Enforceable Agreement to Arbitrate Exists

The terms of the Arbitration Agreement evidence an enforceable contract. Plaintiff signed the Arbitration Agreement—indisputable evidence that he accepted the terms of the offer and agreed to be bound by the terms of the agreement requiring him to arbitrate his claims. *See Retail Clerks*, 96 Wn.2d at 944 ("A party's signature on a contract shows an objective

DEFENDANTS' MOTION TO COMPEL
ARBITRATION, OR IN THE ALTERNATIVE,
MOTION TO DISMISS
Page 11 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

manifestation of the signer's intent to be bound to the contract.") Further, the consideration element is met. At his time of hire in October 2015, Plaintiff signed the Arbitration Agreement. As evidenced by the new employee checklist, Plaintiff had seven business days to review and sign the Arbitration Agreement in exchange for his employment with Gracenote. (Dawson Decl., Ex. B).  Thus, in exchange for his employment, Plaintiff agreed to submit all employment-related claims he has against Defendants to mandatory, binding arbitration. *See generally Labriola v. Pollard Grp., Inc.*, 152 Wash. 2d 828, 834 (2004) (citing *Browning v. Johnson*, 70 Wash.2d 145, 147 (1967) ("Courts generally do not inquire into the adequacy of consideration and instead utilize a legal sufficiency test. Legal sufficiency 'is concerned not with comparative value but with that which will support a promise.'")

### b. The Parties Agreed to Arbitrate the Claims at Issue

As set forth in Section II.C, *supra*, the Arbitration Agreement covers the claims Plaintiff alleges against Defendants in his SAC. The Arbitration Agreement provides: "[t]he arbitration requirement applies to all statutory, contractual and/or common law claims arising from employment with the Company including, but not limited to, claims arising under Title VII of the Civil Rights Action of 1964, the Age Discrimination in Employment Act; the Equal Pay Act of 1963; the California Fair Employment and Housing Act; California Labor Code sections 200, *et. seq.*, the Fair Labor Standards Act; and the Americans with Disabilities Act." (Dawson Decl., Ex. A.)

Plaintiff's claims against Defendants in this action are subject to the Arbitration Agreement's requirement to arbitrate, as the claims constitute disputes between Plaintiff and Defendants relating to Plaintiff's employment with Defendants and are not excluded by the

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 12 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

language of the Arbitration Agreement.[2] Indeed, consistent with the federal policy favoring arbitration, the Ninth Circuit follows the rule that "[t]o require arbitration, [Plaintiff's] factual allegations need only '*touch* matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13, (1985)) (emphasis added). Plaintiff's claims are therefore subject to the Arbitration Agreement because they constitute employment-related claims Plaintiff alleges against Defendants.

The foregoing demonstrates that Plaintiff entered a valid arbitration agreement covering the claims at issue here. The Court should therefore compel arbitration of Plaintiff's claims.

**B.     Entry of a Stay Pending Confirmation of the Arbitration Award is Also Appropriate**

Upon entry of an Order compelling arbitration, the Court should stay this action, consistent with Section 3 of the FAA and Washington law, until such time as the parties move this Court to confirm, vacate, or modify the arbitrator's award. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("The FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement."); 9 U.S.C. § 3 ("[T]he court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had."); RCW 7.04A.070(6) ("If the court orders arbitration, the court shall on just terms stay any judicial proceeding that

---

[2] The Arbitration Agreement states it is not applicable to claims for workers' compensation benefits, unemployment claims, benefit claims that culminate in another arbitration process, claims arising under ERISA, administrative charge alleging violation of federal and state laws prohibiting discrimination, harassment and retaliation, or provisional remedies under California Code of Civil Procedure section 12818. (Dawson Decl., Ex. A.)

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 13 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

involves a claim subject to the arbitration."); *see also* 9 U.S.C. § 9 ("any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected"); RCW 7.04A.220 ("After a party to the arbitration proceeding receives notice of an award, the party may file a motion with the court for an order confirming the award, at which time the court shall issue such an order unless the award is modified or corrected . . . or is vacated.").

### C. In The Alternative, The Court Should Dismiss Plaintiff's Seventh and Eighth Causes of Action

#### 1. All Claims Prior to 2020 Are Time-Barred Under California Law

As set forth *supra*, Plaintiff's complaint is wide-ranging, and he does not make clear what specific conduct he contends to be discriminatory or retaliatory adverse actions as opposed to merely part of the colorful backdrop he portrays to the Court. To the extent Plaintiff intends to base his California FEHA claims on any action prior to his 2019 move to Washington (including the alleged demotion when he became a Director), such claims are time-barred because he failed to timely exhaust his administrative remedies.

For any alleged conduct that occurred before January 1, 2020, Plaintiff was required to file an administrative complaint with the DFEH no later than one year from the date of the alleged unlawful conduct before filing a lawsuit under the FEHA. Cal. Gov't Code § 12960(d); *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 716 (9th Cir. 1990) ("Exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts.") (quoting *Bennett v. Borden, Inc.*, 56 Cal. App. 3d 706, 709–10 (1976)); *Romano v. Rockwell Int'l., Inc.*, 14 Cal. 4th 479, 492 (1996) (timely filing of an administrative complaint, and exhaustion of

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 14 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

that remedy, is a prerequisite to maintenance of a civil action for damages under the FEHA).[3] Plaintiff alleges he was demoted in 2017. (SAC ¶ 16.) Therefore, he had until approximately December 2018 to file his charge with the DFEH. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (holding the statute of limitations for a discrimination claim begins to run at the time the adverse employment action was made and communicated to the plaintiff). The Ninth Circuit Court of Appeals similarly held that "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (1979).[4] Plaintiff then moved out of California in 2019 after his alleged demotion. (SAC ¶¶ 6, 16, 92, 100.) To the extent the SAC can be read to include allegations up to the date of his move, Plaintiff's claims are still barred by the statute of limitations. He had, at the latest, until December 31, 2020[5] to file a complaint with the DFEH for any conduct that occurred when he was employed in and lived in California. Yet, Plaintiff did not file his DFEH complaint until November 22, 2023.[6] (SAC ¶¶ 98, 106.) Because Plaintiff did not exhaust his administrative remedies within the one-year statute of

---

[3] As of January 1, 2020, AB 9 effectively amended Government Code sections 12960 and 12965 to state that all FEHA claims have a statute of limitations that extends to three years from the date of the discrimination, retaliation, or harassment. *Pollock v. Tri-Modal Distrib. Servs., Inc*., 11 Cal. 5th 918, 931 (2021). The new three-year period of AB 9 applies, however, only to FEHA claims that arise *after* the enactment date (January 1, 2020) and does not retroactively include previous violations. "*This act shall not be interpreted to revive lapsed claims*." (A.B.9, 2019 Cal Stat. Ch. 709, Sec. 3.) (emphasis added).

[4] "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." *See Pollock*, 11 Cal. 5th 918 at 937 quoting *Guz v. Bechtel Nat'l, Inc*., 24 Cal.4th 317, 354 (2000). "The statute of limitations provisions of title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. 2000a) and the FEHA are substantially the same in their usage of the word 'occurred.'" *Pollock*, 11 Cal. 5th 918 at 937. Therefore, it is not improper to look to Title VII for interpretation of the FEHA statute of limitations.

[5] Plaintiff does not state which month he moved out of California, so for purposes of this Motion, Defendants construe the facts in the light most favorable to Plaintiff.

[6] Under the new statute (AB 9), any alleged wrongful conduct that occurred prior to November 22, 2020—three years before Plaintiff filed his DFEH complaint—is also time-barred.

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 15 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

limitations with respect to any alleged conduct that happened while he worked and lived in California, any remaining portions of Counts VII and VIII not disposed of *supra* are time-barred and must be dismissed with prejudice.

### 2. California Law Does Not Apply to Actions Plaintiff Alleges Took Place After His 2019 Relocation

Although it is unclear whether Plaintiff attempts to include additional earlier alleged adverse actions in Counts VII and VIII, as addressed *supra*, California law does not apply to his principal adverse action, the termination of his employment, or any other actions Plaintiff describes as taking place after 2019. As Plaintiff states in his SAC, he became a resident of Washington in 2019. (SAC ¶¶ 6, 92, 100.) Plaintiff was informed of the elimination of his position on March 21, 2023. (*Id.* ¶ 50.)

Plaintiff lived and worked outside the state of California after 2019, and the FEHA could only apply after his move to claims based on conduct that occurred within the state of California. It is well established that California's state law embodies a presumption against the extraterritorial application of its own statutes. *See Rulenz v. Ford Motor Co.*, No. 10cv1791–GPC–MDD, 2013 WL 2181241, at *3 (S.D. Cal. May 20, 2013) (citing *Diamond Multimedia Sys., Inc. v. Super Ct.*, 19 Cal. 4th 1036 (1999)). This principle applies with full force to claims brought pursuant to the FEHA.

California courts have found that FEHA does not apply to non-residents employed outside the state when the tortious conduct did not occur in California. For example, FEHA does not apply when the non-resident was not physically in California at the time the allegedly tortious act occurred. In *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1852 (1996), the court held that the FEHA did not apply to harassment of a Washington resident that took place on a ship that occasionally had stopovers at California ports. The court explained it was

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 16 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

"unwilling to . . . apply[] this state's employment-discrimination regime to nonresidents employed outside the state" and that "applying [California's] employment-discrimination regime to nonresidents employed outside the state," even those working for a California employer, "would raise difficult issues of constitutional law." (*Id*. at 1859.)

To properly plead and survive a motion to dismiss on a FEHA claim, a plaintiff must sufficiently allege the allegedly discriminatory or retaliatory conduct occurred in the state of California. *See Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988, 2007 U.S. Dist. LEXIS 11728, 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007) (dismissing FEHA claim for failure to state with specificity that the alleged tortious conduct took place in California); *Rulenz*, 2013 WL 2181241, at *4-5  (dismissing FEHA claims of a California resident where the majority of her allegations involved acts which occurred in the state of Nevada); *Weinberg v. Valeant Pharms.*, No. SACV151260DOCKESX, 2015 WL 13907424, at *5 (C.D. Cal. Nov. 4, 2015) (granting the defendants' motion to dismiss FEHA claims where the plaintiff's assignments required him to work for a California employer, on the basis that it was unclear whether the plaintiff was physically located in California, and the mere assertion that he performed services for the California employer was insufficient to support a conclusion that the plaintiff was employed in California.)

In this case, even in his third attempt at filing his lawsuit, Plaintiff 1) still does not attempt to connect any alleged discriminatory or retaliatory acts related to his termination to the state of California, 2) omits the work locations of Levy and Sims-Williams (who informed him of his position elimination), and 3) omits where he physically was when he was informed of his position termination. Plaintiff's claimed realization of an alleged demotion—the only adverse employment action alleged other than his termination—occurred shortly after his title was changed to "Director," which occurred in 2017—*prior* to his 2019 move to Washington—

DEFENDANTS' MOTION TO COMPEL
ARBITRATION, OR IN THE ALTERNATIVE,
MOTION TO DISMISS
Page 17 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

and is time-barred. (SAC ¶ 15.) And even though Plaintiff alleges he attended a conference in California in 2022, he does not allege that any discriminatory or retaliatory conduct occurred while he was at the conference. Nor does Plaintiff allege he was in California for any *timely* alleged adverse employment action—i.e. his termination. Without these allegations, the FEHA does not apply to his claims arising from events occurring after his 2019 move to Washington. Accordingly, this Court should dismiss counts VII and VIII to the extent they are based on such allegations.

## V. CONCLUSION

For the foregoing reasons, Defendants request this Court to compel Plaintiff's claims against Defendants to binding arbitration pursuant to the parties' Agreement. In the alternative, Defendants request this Court dismiss Plaintiff's seventh and eighth counts with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED this 3rd day of May, 2024.

I certify that this memorandum contains 4,996 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
Victoria E. Ainsworth, WSBA No. 49677
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com
tainsworth@corrcronin.com

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 18 - 3:23-cv-06150

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

|   |   |
|---|---|
| 1 | |
| 2 | Cardelle Bratton Spangler, *Admitted Pro Hac Vice* |
| 3 | WINSTON & STRAWN LLP |
| 4 | 35 West Wacker Drive |
| 5 | Chicago, IL 60601 |

Cardelle Bratton Spangler, *Admitted Pro Hac Vice*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600 Phone
(312) 558-5700 Fax
cspangler@winston.com

Whitney Williams, *Admitted Pro Hac Vice)*
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
(213) 615-1700 Phone
(213) 615-1750 Fax
whwilliams@winston.com

*Attorneys for Defendants*

DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS
Page 19 - 3:23-cv-06150

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900