HONORABLE TIFFANY M. CARTWRIGHT

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

JUSTIN FRANKS,

                Plaintiff,

     v.

THE NIELSEN COMPANY (US), LLC;
GRACENOTE, INC.; JOHN DOES 1-10,

           Defendants.

No. 3:23-CV-06150

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS**

Note on Motion Calendar: July 17, 2024

## INTRODUCTION

Defendants' combined motion to compel arbitration and dismiss seeks to have their cake and eat it, too. The Defendants rely on an arbitration "agreement" inside an Employee Handbook that declared on its first page was "not intended to create any contractual rights or obligations." (Exhibit A to Declaration of Justin Franks ("Franks Decl."), Acknowledgment of Receipt.) The Defendants' motion to compel posits that no court should decide any aspect of this case, yet Defendants simultaneously ask this Court to dismiss some of Franks's claims. Defendants sought to have this Court dismiss all California claims for lack of a California connection in a first motion to dismiss (Dkt. 13), before disclosing a purported arbitration policy governed by California law.

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

Defendants cannot have it both ways; the Court should reject Defendants' contradictory arguments. The motion to compel should be denied because there was no enforceable agreement to arbitrate. The "agreement" itself is a policy within a larger document that disclaims any intent to form a contract, which at a bare minimum prevented Franks from knowingly waiving his right to bring claims in court. Regardless, the language of the purported arbitration policy does not cover claims against Nielsen. And whatever entitlement to arbitrate Defendants believe they have, they waived it through litigation conduct. Rather than promptly raise the arbitration policy, Defendants "engag[ed] in months . . . of litigation—filing motions to dismiss. . .—before deciding they would fare better in arbitration," including moving to dismiss the claims for lack of a California nexus before disclosing an arbitration policy governed by California law. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 413 (2022). This suit should remain before this Court, and Defendants' motion to compel should be denied.

When this Court addresses the merits, as Defendants appear to concede "in the alternative" that it should, it should find that Franks's California claims are well-pled and timely. Franks challenges California-based conduct and retaliation for his California-based protected activity that occurred or continued within three years of his complaint with the California Department of Fair Employment and Housing. Defendants' motion to dismiss should therefore be denied, as well.

## STATEMENT OF FACTS

In 2015, Defendant Gracenote, Inc. hired Plaintiff Justin Franks as a manager of a small team in California. (SAC ¶¶ 6–7.) At the time, Franks was an experienced and successful information technology leader with more than two decades of experience at both start-ups and large corporations. (*Id.* ¶ 6.). During in-person onboarding, Gracenote presented Franks with its

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 2

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

Employee Handbook, which contained Gracenote's company policies, including its Arbitration Policy, and an acknowledgement form. (Franks Decl. ¶¶ 3–5, 7; Exhibit A.) Franks was required to acknowledge receipt of the Employee Handbook by signing an acknowledgement page that provided, "I understand that the policies contained in the Handbook are not intended to create any contractual rights or obligations." (Franks Decl. ¶ 7; Exhibit A.) The next page contained the arbitration policy on which Defendants rely. (Exhibit A at 2.) Gracenote presented Franks with all onboarding documents and directed him to sign certain pages of the Handbook. Franks did not understand that Gracenote was asking him to sign away his right to pursue statutory discrimination claims in court. (Franks Decl. ¶ 8–10, 13.)

Once onboarded, Franks quickly succeeded. Franks grew two key IT departments at Gracenote from the ground up, increasing the run rate of his departments by over 1000x. (*Id.* ¶ 8.) Nielsen acquired Gracenote in 2017 and took over the business, including Franks's successful departments. (*Id.* ¶ 10.) After the merger, Nielsen's IT leadership visited Franks and his team at their Emeryville, California office to discuss their work. (*Id.* ¶ 13.) But despite acknowledging Franks's objectively excellent work, Nielsen removed him from his leadership role and replaced him with a white outside hire at two levels higher than Franks. (*Id.* ¶¶ 14–15.) Recognizing the poor optics of the replacement, Nielsen "corrected" Franks's title in a "promotion" under which Nielsen often used Franks as a glorified administrative assistant, setting up conference rooms and changing the snacks in the office. (*Id.* ¶¶ 14, 16–17.)

In 2019, Franks moved from California to Washington. (*Id.* ¶ 92.) But his official work location remained Gracenote's headquarters in Emeryville, California. (*Id.*) He regularly traveled to California to conduct business until COVID made travel infeasible beginning in 2020. Until May 2022, he was managed by California-based Senior Vice President of TechOps

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

Tricia Higgins. (*Id.* ¶¶ 17, 92.) Higgins assigned Franks menial tasks, asking the former lead of two departments to create spreadsheets listing contracts and vendors and create a Wiki page for listing products. (*Id.* ¶ 17.) Because of the actions of Higgins and others at Nielsen, Franks was "removed from his position of real responsibility and growth potential . . . and forced by Nielsen into a glorified project management role," causing his career to stagnate. (*Id.* ¶ 21.)

Throughout his tenure, Nielsen attempted to placate Franks and other Black employees with meaningless "diversity" awards, programs, and roles, all the while "refusing to fairly pay and promote talented and high-performing Black employees." (*Id.* ¶ 19.) Thus, Franks was repeatedly passed over for advancement opportunities, for which "Nielsen's standard practice with respect to favored non-Black employees is to simply place them in roles of increasing responsibility and higher pay." (*Id.* ¶ 20.) For example, in July 2022, Nielsen promoted a white employee whom Franks had trained to Vice President of Cloud/CloudOps at Gracenote—one of the departments Franks had built. (*Id.* ¶ 26.)

In the diversity roles Nielsen foisted on Franks, he learned that Black employees throughout the company had experienced similar discrimination and career stagnation at Nielsen. (*Id.* ¶ 25.) In 2022, Franks traveled to Nielsen's Emeryville, California office, where he reported to both Nielsen's Chief Diversity Officer Sandra Sims-Williams and Nielsen executive Sujit Das Munshi that he and other Black employees were denied advancement. (*Id.* ¶¶ 27–28.) Following this protected activity and follow-up communications and conversations with high-level Nielsen executives about endemic discrimination at Nielsen, (*id.* ¶¶ 29–36), Franks met one-on-one with Nielsen's CEO David Kenny in January 2023. (*Id.* ¶ 37). Franks described his career stagnation and preferential treatment of white colleagues, to which Kenny asked Franks why he "stuck around" and encouraged Franks to look for jobs elsewhere. (*Id.*)

Franks learned that Nielsen executives had branded him as "disruptive" because of his protected activity of reporting discrimination and "wanted him 'out.'" (*Id.* ¶¶ 41, 49.) Nielsen conducted layoffs in January 2023 and forced Franks to implement leadership's decision to lay off his only Black direct report and retain a less-experienced, less-tenured, lower-performing white employee, following a pattern of disproportionately laying off Black employees. (*Id.* ¶ 43–45.) In March 2023, a week after a colleague warned Franks that "key leaders at Nielsen 'really wanted him out' because he was 'making waves,'" (*id.* ¶ 49), Nielsen fired Franks, using the same script it used in the reduction in force that had long since concluded. (*Id.* ¶ 50.)

On November 22, 2023, Franks filed a complaint of discrimination with the California Department of Fair Employment & Housing ("DFEH") and received a right-to-sue notice on November 30, 2023. (*Id.* ¶ 98.) Franks then filed this action alleging, among other things, race discrimination and retaliation under the California Fair Employment and Housing Act ("FEHA"), in December 2023. (Dkt. 1.) On February 16, 2024, Defendants moved to dismiss the FEHA claims on the merits, arguing that Franks insufficiently alleged a nexus to California and that his claims were time-barred. (Dkt. 13.) Defendants did not move to compel arbitration, nor did they note that the purported arbitration policy is governed by California law. (*Id.*) In response, Franks amended his complaint to add additional facts. (Dkt. 15.) And after receiving his right-to-sue notice from the EEOC, Franks sought to amend to raise the now-exhausted Title VII claims. (Dkt. 19). Defendants "consent[ed] to Plaintiff amending the Complaint" and did not raise the arbitration policy. (*Id.* ¶ 3.)

On May 3, 2024, five months into the litigation, after the filing of two amended complaints and a Rule 12(b)(6) motion seeking the Court to resolve the case on the merits, Defendants first raised the issue of the arbitration policy. (Dkt. 25.) In support, Defendants

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 5

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

submitted the declaration of a Nielsen director who averred that the agreement was available in Franks's employment file. (Dkt. 26 ¶ 7.)

## LEGAL STANDARD

In considering a motion to compel arbitration, courts look to the Federal Arbitration Act ("FAA") for guidance. The FAA provides that contracts for arbitration are enforceable "save upon such grounds as exist at law or in equity for the revocation of any other contract." 9 U.S.C. § 2. The Supreme Court has made clear that "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022); *see also, e.g.*, *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987) ("'[S]trong federal policy in favor of enforcing arbitration agreements' is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism."). Courts cannot "devise novel rules to favor arbitration over litigation." *Morgan*, 596 U.S. at 418. And generally applicable state-law contract defenses, such as fraud, duress, or unconscionability, will defeat an arbitration agreement. *McBurnie v. RAC Acceptance E., LLC*, 95 F.4th 1188, 1191 (9th Cir. 2024).

"To survive a Rule 12(b)(6) motion, the complaint does not need detailed factual allegations, but must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zimmerman v. PeaceHealth*, — F. Supp. 3d —, 2023 WL 7413650, at *3 (W.D. Wash. 2023) (cleaned up). "The Court 'must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party.'" *Id.* (quoting *Retail Prop. Tr. v. United Bhd. Of Carpenters & Joiners of Am.*, 768 F.3d 938, (9th Cir. 2014)). "[O]nly in rare circumstances can a defendant prevail on [an affirmative] defense in a Rule 12(b)(6) motion." *Id.* at *1. "[D]ismissal on that ground is proper only if the

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 6

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

defendant shows some obvious bar to securing relief on the face of the complaint or in any judicially noticeable materials." *Id.* at *6 (quoting *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023)).

## ARGUMENT

### I.   Franks Cannot Be Compelled to Arbitration.

Defendants' attempt to enforce their Arbitration Policy is not grounded in accepted principles of arbitration or California contract law. The plainly contradictory and inconsistent terms of the Employee Handbook's Acknowledgement Agreement and Arbitration Policy stop Defendants from forcing Franks into arbitration, or at a minimum, prevented him from knowingly waiving his right to access the courts. Even if such a construction were permissible, the Arbitration Policy covers Franks's employment with Gracenote, not Nielsen. Nielsen has done nothing to demonstrate that it is a third-party beneficiary with any right to enforce the Arbitration Policy. Finally, Defendants have waived any entitlement to arbitrate by first insisting that this Court rule on the merits. Thus, the motion to compel should be denied.

### A.   The Enforcement of Arbitration Policy Is Challenged on The Same Basis as Any Other Contract.

Because arbitration is a matter of contract law, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Therefore, the district court's role on a motion to compel arbitration is limited "to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 7

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

In making this determination, courts consider what, if anything, the parties agreed to. *See Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024). This consideration requires the court to assess "state-law principles that govern the formation of contracts." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). And importantly, the party seeking to compel arbitration bears the burden to prove that a valid contract was formed. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Here, Franks agrees with Defendants' assertion (at 7) that California contract law applies. Thus, Defendants must prove that a valid contract to arbitrate was formed under generally applicable principles of California law.

**B.    The Disclaimer in the Acknowledgement Agreement Forbids Formation of Any Contract.**

Franks is not bound by any policy in the Employee Handbook, including the Arbitration Policy. "[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Knutson*, 771 F.3d at 566 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Cal. Ct. App. 1972)). "This principle of knowing consent applies with particular force to provisions for arbitration." *Id.* (quoting *Windsor Mills, Inc.*, 25 Cal. App. 3d at 993). "If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto." *Id.* (quoting *Com. Factors Corp. v. Kurtzman Bros.*, 131 Cal. App. 2d 133, 136 (Cal. Ct. App. 1955)) (internal quotation marks and citation omitted).

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 8

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

Defendants present the arbitration provision as though it is a standalone document. In fact, it was a page in a larger Employee Handbook, as shown by Defendants' exhibit labeling it as page "2" and excluding other pages. (Dkt. 26-1.) The Employee Handbook was given to Franks at his onboarding and contained other relevant provisions, including the Acknowledgement Agreement. (Franks Decl. ¶ 5; Exhibit A.) In resolving contractual disputes, the terms of an employer's promulgated employee handbook are the "central focus of the contractual analysis." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 345 (2000). When that handbook contains a disclaimer, courts should not ignore them when ascertaining the terms of the employment relationship. *Id*. at 340.

Here, two disclaimers in the Acknowledgement Agreement portion of the Employee Handbook establish that the arbitration provision is not a binding agreement. First, the Acknowledgement Agreement expressly supersedes other agreements. (Exhibit A.) The Acknowledgement states that its terms "supersedes all previous agreements, whether written or oral, express or implied, relating to the subjects covered in this [herein.]". (*Id.*) The Arbitration Policy is among the policies covered. (*Id.*) Thus, the executed Acknowledgement Agreement is the controlling document. Second, the Acknowledgement Agreement prohibits contract formation. The Acknowledgement explains that all "policies contained in the Handbook are not intended to create any contractual rights or obligations." (*Id.*) (emphasis added). Defendants disregard the Acknowledgement Agreement entirely. By doing so, they ask this Court to ignore the express intent of the Acknowledgement Agreement, but courts reject similar arguments.

In *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781 (Cal. Ct. App. 2016), the Court of Appeal held that an arbitration agreement in an employee handbook did not create an enforceable agreement to arbitrate. Like Franks, the employee in *Esparza* signed an

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

acknowledgement form accompanying an employee handbook. The form stated that "[T]his handbook is not intended to be a contract . . . nor is it intended to otherwise create any legally enforceable obligations on the part of the Company or its employees." *Id.* at 789. Although the employee signed the handbook acknowledgement form, which mentioned the arbitration agreement contained in the handbook, the form did not state that the employee agreed to the arbitration. *Id.* at 789–91. As such, the appellate court held that the trial court properly denied the employer's petition to compel arbitration. *Id.*

In reaching this conclusion, the *Esparza* court relied on *Mitri v. Arnel Management Co.*, 157 Cal. App. 4th 1164 (Cal. Ct. App. 2007); *Esparza*, 2 Cal. App. 5th at 788–89. In *Mitri*, the employer also sought to compel arbitration based on a handbook that contained a section titled, "Arbitration Agreement." The "Arbitration Agreement" section provided that all employees would be given a copy of an arbitration agreement that they were required to sign. *Id.* While the employer failed to provide any evidence of the signed arbitration agreement, *Esparza* found *Mitri* persuasive in two ways. First, the employee handbook indicated there was no intent to establish an agreement (as such, applying contract law, the courts in *Mitri* and *Esparza* each concluded that the handbook provision did not constitute an agreement to arbitration.). *Id.* Second, the *Mitri* acknowledgement failed to specifically state that the employee agreed to abide by the arbitration agreement provision in the handbook. *Id.* at 789–90.

This case is like both *Mitri* and *Esparza*. Like the plaintiffs in those cases, Franks signed the Acknowledgement Agreement accompanying the Employee Handbook which explicitly forbids contract formation. The Acknowledgement Agreement could not be clearer in its intent to prevent the parties from being contractually bound by any policy in the Handbook. (Exhibit A.) Defendants will undoubtedly attempt to distinguish *Mitri* and *Esparza*

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

by noting that the acknowledgement agreements in *Mitri* and *Esparza* did not contain any reference to agreeing to the employer's arbitration policies while Franks's Acknowledgement Agreement does. The flaw in that argument lies in the construction of Defendant's Acknowledgement Agreement.

For one thing, Franks's Acknowledgement Agreement is intended to control the terms of his employment and forbids any contract formation. But moreover, its language makes no attempt to exclude the Arbitration Policy from these intentions. Indeed, Defendants drafted the Agreement with clear intent that no policy could create a contract. Defendants could have excluded the arbitration policy from this disclaimer or otherwise set it apart. Other employers have done so, and courts find such exclusions sufficient to bind an employee. Here, Defendants took no such action. In fact, they went so far as to distinctly mention the Arbitration Policy twice in the Employee Handbook (one being immediately before the disclaimer prohibiting contract formation) but express no intent in writing or otherwise to set it apart from the prohibition or ensure it survival. At bottom, Defendants ask the Court to insert an exception to the Acknowledgement Agreement's disclaimers that excludes its arbitration policy. But the Court's role "is simply to ascertain and declare what is in terms or in substance contained [in an instrument], not to insert what has been omitted." *Mitri*, 157 Cal. App. 4th at 1173 (quoting Cal. Code Civ. Proc. § 1858). Defendants' omission is fatal to this argument.

The disclaimers and construction of the Acknowledgement Agreement leaves only one plausible conclusion: the "policies" contained in the Handbook and referenced in the Acknowledgement Agreement, including the arbitration policy, are just that, *policies*—subject to the same restrictions as any other.

STOWELL & FRIEDMAN, LTD.
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### C.   Franks Did Not Knowingly Waive His Right to Litigate His Discrimination and Retaliation Claims.

At a minimum, the Acknowledgement Agreement's insistence that the Handbook created no contractual rights or obligations prevented Franks from knowingly waiving his right to bring statutory discrimination and retaliation claims in court, making any purported arbitration policy ineffective. Though the FAA authorizes enforcement of arbitration agreements, "[a] particular statute . . . may either preclude or limit the enforcement of arbitration agreements with regard to claims arising under that statute." *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998). When, as here, an employee raises statutory discrimination claims, "Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes." *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1304 (9th Cir. 1994).

Franks did not "knowingly agree" to arbitrate his claims where the Arbitration Policy was placed within his Employee Handbook that declared itself to create no contractual rights or obligations. *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997). As the Ninth Circuit has explained, "the right to a judicial forum is not waived even though the Handbook is furnished to the employee and the employee acknowledges its receipt and agrees to read and understand its contents." *Id.* Receiving a document that promised on an introductory page to create no contractual rights or obligations, and within that document purports to do just the opposite, is not the sort of express and unambiguous language required to waive access to court for discrimination claims.

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 12

STOWELL & FRIEDMAN, LTD.
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

**D.    Even if an Arbitration Contract Exists, it Would Not Cover Franks's Claims Against Nielsen.**

Even if it were enforceable, the arbitration policy does not cover Franks's claims against Nielsen. It is a "fundamental principle that 'arbitration is a matter of consent.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 659 (2022) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)). "A court may order arbitration of a particular dispute only where . . . the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original). "In construing the scope of an arbitration agreement, [courts] 'apply ordinary state-law principles that govern the formation of contracts.'" *Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 703 (9th Cir. 2024) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, the express language of the arbitration policy provides that only disputes arising from Franks's employment with Gracenote are subject to arbitration. Nothing in the agreement requires Franks to arbitrate disputes arising from his employment with Nielsen. Thus, Franks's discrimination and retaliation claims against Nielsen—arising from his work for them between 2017 and 2023—must remain in federal court.

The Acknowledgement Agreement explains that "Gracenote Inc." shall be referred to throughout the Handbook as "Gracenote" or "Company." (Exhibit A.) A few pages later, on page "2" of the Handbook, the arbitration policy appears. (Dkt. 26-1.) It states:

> The Company and the undersigned employee hereby agree that any dispute with any party (including the Company's affiliates, successors, predecessors, contractors, employees, and agents), *that may arise from the employee's employment with the Company or the termination of the employee's employment with the Company* must be submitted for resolution by mandatory, binding arbitration.

*Id.* (emphasis added). It continues:

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 13

STOWELL & FRIEDMAN, LTD.
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

> The arbitration requirement applies to all statutory, contractual, and/or common law claims *arising from employment with the Company* including, but not limited to, claims arising under the Title VII of the Civil Rights Act of 1964 . . . [and] the California Fair Employment and Housing Act . . . .

*Id.* (emphasis added). This plain and unambiguous language of the arbitration policy shows that arbitration applied only to Franks's "employment with *the Company*"—Gracenote. *Id.* (emphasis added). No language suggests that Franks consented to arbitrate claims arising from his employment with Nielsen.

Franks's claims largely concern the discrimination and retaliation he faced at Nielsen. In 2015, Gracenote hired Franks to lead and build out its DevOps and Cloud departments, which he did with great success, even if he was not afforded a title and salary commensurate with his responsibilities. (*See* SAC at 3.) But in early 2017, Nielsen acquired Gracenote and assumed control over Franks's work. (*Id.* at 3–4.) Nielsen removed Franks from his leadership role in the DevOps and Cloud departments in order to put two white men in charge. *Id.* Nielsen then directed Franks to report to its CTO and Senior Vice President of Tech Ops, who relegated him to performing humiliating and menial make-work assignments. (*See, e.g.*, *id.* at 4–5.) Further, it was various Nielsen executives to whom Franks brought his concerns regarding racial discrimination against himself and other Black employees at Nielsen. (*See, e.g.*, *id.* at 7–12.) And it was Nielsen executives who unlawfully retaliated against Franks by terminating him in 2023 under the pretext of a reduction in force. (*See id.* at 12–15.)

These discriminatory and retaliatory acts support Franks's claims and arise out of Franks's employment by Nielsen rather than Gracenote. They thus fall outside the scope of the arbitration agreement. And where there is no "affirmative contractual basis for concluding that [Plaintiff] agreed to" arbitrate these claims, he "cannot be coerced into" doing so.

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 14

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

### E.   Defendants Waived Any Entitlement to Arbitrate by Seeking to Litigate This Case on the Merits.

Even if the Arbitration Policy had any effect, Defendants waived their right to arbitrate. "The right to arbitration, like any other contractual right, can be waived." *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan*, 596 U.S. at 417. Litigants waive their right to arbitrate when they engage in acts inconsistent with that right. *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 777 (D.C. Cir. 1987)).

Under the Ninth Circuit's standard for waiver, the party opposing arbitration and asserting waiver must show the other party's "(1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs.*, LLC, 59 F.4th 457, 468 (9th Cir. 2023).[1] Concerning the second prong, the Ninth Circuit does not follow any "concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Instead, the totality of the parties' actions are examined. *Hill*, 59 F.4th at 471.

Here, the first prong is satisfied. While Franks maintains that there was never a binding arbitration agreement, Defendants' motion to compel shows that they knew Franks signed the Acknowledgement Agreement and arbitration policy in 2015. (Dkt. 26-1.) "Knowledge of a contractual right to arbitrate is imputed to the contract's drafter. *Plows v. Rockwell Collins*,

---

[1] The Ninth Circuit no longer requires prejudice to establish waiver. *Hill*, 59 F.4th at 468. In 2022, the Supreme Court held it improper "to condition a waiver of the right to arbitrate on a showing of prejudice," because "a court may not devise novel rules to favor arbitration over litigation." *Morgan*, 596 U.S. at 417–18.

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 15

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

*Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011). Moreover, Defendants acknowledge that Nielsen has a regular practice for maintaining Gracenote employee records; that declarant Kelli Dawson, Director of Enterprise HRBP at Nielsen has access to these records; and that she knew "the location where Nielsen keeps the former Gracenote employee records." (Dkt. 26 ¶¶ 5–7.) Moreover, Defendants, both before and after Nielsen's acquisition, are global companies with thousands of employees around the world—it is doubtful that either Defendant is oblivious to whether it used arbitration provisions for employees in a given timeframe.

Defendants also engaged in conduct inconsistent with their right to arbitrate, satisfying the second prong. Throughout months of litigation, Defendants repeatedly asked this Court— not an arbitrator—to resolve the merits of this case. Franks filed his initial complaint on December 12, 2023. (Dkt. 1). Notwithstanding the arbitration policy, Defendants responded two months later with a Rule 12(b)(6) motion to dismiss, actively petitioning this Court to resolve portions of this case on the merits. (Dkt. 13.) "Seeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum." *Newirth ex rel. Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019).[2] What's more, the crux of Defendants' motion to dismiss was the purported lack of a nexus to California, an argument that was buoyed by Defendants' decision not to invoke an arbitration policy that was governed by California law. And though their motion attacked only the California claims, Defendants confirmed their intent to litigate the other claims, promising that "all his claims will be shown to fail as a matter of law in due course." (Dkt. 13 at 1.)

---

[2] *Newirth* was nominally abrogated by *Morgan* because it concluded that the plaintiff was prejudiced. *Newirth*'s holding about the other elements of waiver, however, remains good law.

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

Defendants' conduct inconsistent with their purported right to arbitrate continued. Defendants stipulated to Franks's request to amend his complaint in response to their motion, without mentioning arbitration. (Dkt. 16.) And in March 2024, Defendants stipulated to Franks amending his complaint to add administratively exhausted Title VII claims, again without mentioning the arbitration provision. (Dkt. 20.) Defendants' first mention of an arbitration policy came in an email to Franks's counsel on April 15, 2024, months after this litigation commenced. (Dkt. 25 ¶ 3.) And even in the same motion as they now seek to compel arbitration, Defendants still ask this Court to eliminate some of Franks's claims on the merits.

Defendants' time to raise the arbitration provision has passed. In choosing to delay any purported right to compel arbitration, actively litigating this case, and taking advantage of being in court, Defendants have relinquished any right to arbitrate. *See Van Ness Townhouses*, 862 F.2d at 756, 759 (finding waiver when party answered complaints, moved to dismiss the action, and did not claim a right to arbitration in any of the pleadings); *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. App'x. 663, 664 (9th Cir. 2014) (finding waiver when party answered complaints, filed motions, and did not claim a right to arbitration in any of the pleadings); *Plows*, 812 F. Supp. 2d at 1067–68.

## II.     Franks States Claims for Violations of California Law.

Franks agrees with Defendants that this Court should resolve Defendants' motion to dismiss his FEHA claims. Though Franks moved to Washington in 2019, he alleges timely violations of California law by his California-based supervisor related to his California-centered work and in retaliation for his California-based protected activity.

### A.  Franks Asserts Timely FEHA Claims.

Defendants first argue (at 14–16) that all actions before 2020 are untimely. The statute

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

of limitations is an affirmative defense that Franks need not plead around. *Gross v. Int'l Stage Lines, Inc.*, No. 21-cv-428, 2021 WL 2644573, at *1 (W.D. Wash. June 28, 2021). "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (holding that dismissal based on statute of limitations defense was inappropriate).

"To sue under [FEHA], the plaintiff must first file a complaint with [DFEH]." *Doe v. Regents of Univ. of Calif.*, No. 21-cv-9605, 2022 WL 833627, at *6 (N.D. Cal. Mar. 20, 2022) (citation omitted). "Effective January 1, 2020, California amended the law by changing the one-year limitations period to three years." *Id.* Franks filed a complaint with DFEH on November 22, 2023. (SAC ¶ 98.) Under the three-year limitations period, Franks timely challenges all unlawful practices that occurred on or after November 22, 2020.

Defendants insist that any events that occurred before 2020 cannot form part of any timely California claims. At the outset, Franks must clarify the relevant limitations periods. Defendants posit (at 15) that "the new three-year period of AB 9 applies . . . only to FEHA claims that arise *after* the enactment date (January 1, 2020) . . . ." That is incorrect. Though AB 9 did not "revive claims that have already lapsed," Cal. Gov't Code § 12960(f)(3), the three-year limitations period applies to all claims that had not *already lapsed* by January 1, 2020. In other words, the one-year limitations period applied only to practices that ended on or before December 31, 2018, and the three-year limitation period applies to all practices that ended after January 1, 2019. *Gillespie v. Centerra Servs. Int'l, Inc.*, No. 21-cv-2028, 2022 WL 16964007, at *8 (C.D. Cal. Sept. 7, 2022).

Regardless, events that transpired more than three years before Franks's November

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 18

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

2023 DFEH complaint can form part of Franks's FEHA claims for two reasons. First, under California's "continuing violations" doctrine, an employer's actions "should be viewed as a single, actionable course of conduct if (1) the actions are sufficiently similar in kind; (2) they occur with sufficient frequency; and (3) they have not acquired a degree of 'permanence' so that employees are on notice that further efforts at informal conciliation with the employer . . . would be futile." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 802 (2001). Under FEHA, the continuing violations doctrine applies not only to harassment but also to discriminatory and retaliatory courses of conduct. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005). Here, Franks alleges that beginning with Nielsen's takeover of Gracenote, Nielsen repeatedly passed him over for advancement opportunities while tapping his non-Black colleagues on the shoulder, assigned him menial tasks, and stripped him of responsibility and authority. These actions were similar in kind and frequent throughout his career. Meanwhile, Nielsen "corrected" Franks's title and constantly dangled diversity "leadership" opportunities on the false promise that he was on track for advancement. (SAC ¶¶ 11–12, 22, 25, 27, 33–34, 37.) Franks thus plausibly satisfies all three criteria for continuing violations.

Second, under California's paycheck accrual rule, much like the federal Lilly Ledbetter Fair Pay Act of 2009, "an unlawful event occur[s] each time plaintiff received a discriminatory payment, such that a new limitations period applies to each allegedly discriminatory check." *Carroll v. City & Cnty. of S.F.*, 41 Cal. App. 5th 805, 813 (Cal. Ct. App. 2019), *as modified on denial of reh'g* (Cal. Ct. App. Nov. 27, 2019). In *Carroll*, the plaintiff claimed that the city's disability retirement benefit formula discriminated based on age. She filed her DFEH complaint "more than 17 years after her retirement." *Id.* at 811. The trial court dismissed her FEHA age discrimination claims as untimely, but the Court of Appeal reversed, concluding

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

after canvassing state and federal authorities that that "discriminatory payments within the limitations period are actionable wrongs under FEHA." *Id.* at 819. Here, Franks alleges discriminatory practices in California that depressed his wages throughout his tenure at Gracenote and Nielsen, and each paycheck based on those practices was a new act of discrimination, including after November 2020.

Defendant's authorities do not provide otherwise. Defendants cite *Abramson v. University of Hawaii*, 594 F.2d 202 (9th Cir. 1979) for the proposition (at 15) that adverse employment actions occur at the time of discriminatory acts, not the consequences of those acts. But *Abramson* reversed a district court's grant of summary judgment on a time-bar defense like the one Defendants raise here because some of the actions against her could have potentially arisen during the actionable timeframe. *Id.* at 210. Similarly, in this case, Franks contends that he was discriminatorily denied advancement opportunities and stripped of responsibilities throughout his tenure, including after November 2020.

### B.  Franks Plausibly Alleges that Defendants Violated FEHA in California.

FEHA makes it unlawful "[f]or an employer" to discriminate against "any person" because of protected characteristics. Cal. Gov't Code § 12940(a). Though FEHA does not define either "employer" or "person" with any geographical limitation, California courts have held that FEHA "should not be construed to apply to non-residents employed outside the state when the tortious conduct did not occur in California." *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (Cal. Ct. App. 1996). Thus, courts have held that nonresident plaintiffs who allege wrongful conduct only outside of California are not entitled to relief under FEHA. *Id.* (plaintiff who was harassed at sea and in Washington did not have FEHA claim).

Here, unlike Defendants' authorities where the plaintiffs did "not state what aspects of

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 20

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

the alleged conduct occurred in California," *Dodd-Owens v. Kyphon, Inc.*, No. 06-cv-3988, 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007), Franks alleges that despite his move to Washington, his "official work location remained Gracenote's headquarters in Emeryville, California." (SAC ¶ 92.) After the onset of the COVID pandemic, he "worked virtually with Defendants' employees in California almost daily." (*Id.*) His direct manager until May 2022 "was located in California and engaged in conduct that adversely affected Plaintiff there." (*Id.*) Franks alleges that his California-based manager was responsible for unlawful practices, because "[w]hile reporting to her and throughout 2022, Higgins assigned Franks a host of low-level tasks" that stymied his career. (*Id.* ¶ 17.) Under California law, "eliminating job responsibilities" has been considered an adverse employment action. *See Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1092 (S.D. Cal. 2010) (quoting *Shepard v. City of Portland*, 829 F. Supp. 2d 940, 960 (D. Or. 2011)). And the Ninth Circuit has held that being "reassigned to perform menial work that fell below [plaintiff's] job classification" can be an adverse employment action. *Novak v. England*, 316 Fed. App'x 671, 672 (9th Cir. 2009) (unpublished order). Franks also alleges that "non-Black employees are tapped on the shoulder and handed new opportunities that facilitate their career development and increased earning potential." (SAC ¶ 20.) It is reasonable to infer that Franks's California-based manager Higgins participated in the ongoing, discriminatory refusal to select Franks for advancement.

Under similar circumstances, courts have refused to dismiss FEHA claims raised by non-residents of California. In *Roger-Vasselin v. Marriott International, Inc.*, No. 04-cv-4027, 2006 WL 2038291 (N.D. Cal. July 19, 2006), the district court held that the plaintiff had triable "FEHA claims based on promotion denials to non-California positions while [plaintiff] neither lived nor worked in California." *Id.* at *8. There, as here, the plaintiff asserted that one

STOWELL & FRIEDMAN, LTD.
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

California supervisor was involved in the plaintiff's repeated promotion denials. *Id.* The defendants agreed that "summary judgment [on FEHA claims] would be improper on any promotion denials that can arguably be connected to [the California supervisor]" but asserted that the supervisor was not involved in one of the challenged promotions. The district court found a triable fact issue on the California supervisor's involvement because he testified that while he "didn't determine the final outcome . . . [he] could have provided input." *Id.* Here, on the lenient posture of a motion to dismiss, where the Court draws inferences in Franks's favor, Franks has alleged that during the limitations period, his manager was based in California.

Similarly, in *Rulenz v. Ford Motor Company* (*Rulenz II*), No. 10-cv-1791, 2014 WL 50807 (S.D. Cal. Jan. 7, 2014), even though the Plaintiff worked as a "Las Vegas Dealer Account manager," the Court found a sufficient connection to California because she alleged that she "performed a significant amount of her work assignments in California" and paid California state taxes. *Id.* at *5. Though the court had originally dismissed the plaintiff's FEHA claim without prejudice (which dismissal Defendants cite (at 16), *Rulenz v. Ford Motor Co.*, No. 10-cv-1791, 2013 WL 2181241, at *3 (S.D. Cal. May 20, 2013)), the district court found that these allegations "sufficiently remedied [the FEHA] defect to withstand a motion to dismiss the SAC." *Rulenz II*, 2014 WL 50807, at *5.

Additionally, Franks alleges that he traveled to California to engage in protected activity for which Defendants retaliated against him. Franks began reporting misconduct in person to Defendants' executives at a conference in Emeryville, California in 2022 and suffered retaliation because of it. In *Sims v. Worldpac Inc.*, No. 12-cv-5275, 2013 WL 663277 (N.D. Cal. Feb. 22, 2013), the plaintiff—like Franks—engaged in protected activity in California by testifying against the employer in a colleague's discrimination lawsuit, even

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

though he worked in Arkansas. *Id.* at *1. Two of the employer's California-based executives allegedly retaliated against him by ordering him to relocate from Arkansas to Texas, then fired him and replaced him with someone younger. The plaintiff, who was a Washingtonian at the time of the lawsuit and never worked in California, raised FEHA claims for age discrimination and retaliation. The district court denied the employer's motion to dismiss, finding a sufficient nexus to California. *Id.* at *3.

To avoid the import of Franks's allegations that he faced discrimination from his manager based in California, and retaliation for his protected activity in California, Defendants must pivot to the incorrect insistence (at 17) that none of this is relevant because Franks pleads only two adverse actions: demotion and termination. But Defendants both improperly compartmentalize Franks's claims and, in so doing, ignore the litany of other unlawful employment practices and adverse actions that persisted in California throughout Franks's tenure. The California Supreme Court has explained that the operative language of FEHA prohibiting discrimination "in compensation or in the terms, conditions, and privileges of employment" "must be interpreted broadly to further the fundamental antidiscrimination purposes of the FEHA." *Yanowitz*, 36 Cal. 4th at 1053. "[T]his provision protects an employee against unlawful discrimination with respect to not only so-called 'ultimate employment actions' such as termination and demotion, but also the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." *Id.* at 1053–54. Moreover, adverse treatment need not come in "one swift blow, rather than a series of subtle, yet damaging, injuries. Enforcing a requirement that each act separately constitute an adverse employment action would subvert the purpose of the statute." *Id.* at 1055–56 (citations omitted).

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 23

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888

Franks alleges much more than demotion and termination. Franks was relegated from his position of authority to menial tasks—imposed on him by Higgins from her position in California—that impaired his prospects for advancement and promotion. He, like other Black Nielsen employees, was assigned meaningless "diversity" awards and given additional "diversity"-related duties that did not benefit him. And Higgins and others continuously refused to tap Franks on the shoulder throughout the period she managed him while non-Black employees were placed into higher positions with opportunities for advancement and increased pay and responsibility.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion to Compel Arbitration and Dismiss.

Respectfully submitted this 28th day of June, 2024.

> I certify that this memorandum contains 6,910 words, in compliance with the Local Civil Rules.
>
> STOWELL & FRIEDMAN, LTD.
>
> /s/ Linda D. Friedman
> Linda D. Friedman (Admitted *PHV*)
> 303 W. Madison Street, Suite 2600
> Chicago, IL  60606
> (312) 431-0888 Phone
> (312) 431-0228 Fax
> lfriedman@sfltd.com
>
> Jordan A. Taren, WSBA No. 50066
> SHISHIDO TAREN GOLDSWORTHY
> 705 Second Avenue, Suite 1500
> Seattle, WA  98104
> (206) 622-1604 Phone
> jtaren@shishidotaren.com
>
> *Attorneys for Plaintiff*

PLAINTIFF'S BRIEF IN OPPOSITION
No. 3:23-cv-06150
Page 24

**STOWELL & FRIEDMAN, LTD.**
303 West Madison Street, Suite 2600
Chicago, Illinois 60606
(312) 431-0888