The Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUSTIN FRANKS,<br><br>Plaintiff,<br><br>v.<br><br>THE NIELSEN COMPANY (US), LLC, GRACENOTE, INC., JOHN DOES 1-10,<br><br>Defendants. | **Case No. 3:23-cv-06150-TMC**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS** |

### I.   INTRODUCTION

In his opposition brief, Plaintiff Justin Franks ("Plaintiff") offers only red herrings and misinterpretations of the case law. Plaintiff signed a valid and enforceable Agreement to Arbitration of Disputes ("Agreement"), and this Court should compel Plaintiff to arbitrate his claims. Should this Court deny Defendants' Motion to Compel Arbitration, it should nonetheless dismiss Counts VII and VIII with prejudice, as Plaintiff's California Fair Employment and Housing Act ("FEHA") claims are unsustainable.

None of the documents Plaintiff cites relieve him of his legal obligation to arbitrate his claims against Defendants. The language in the Acknowledgment of Receipt ("Acknowledgment"), upon which Plaintiff relies, applies only to "policies" in the handbook, not to agreements. To the extent Plaintiff claims ignorance of the legal obligations to which he agreed to, such claim is unreasonable. And Nielsen, as an affiliate to the Agreement and Gracenote's parent company, has every right to

enforce the Agreement against Plaintiff, who brought a lawsuit against Nielsen and Gracenote based on the same, inherently inseparable facts. Further, Defendants have not engaged in any conduct that constitutes "intentional waiver." The Agreement, therefore, should be enforced.

Only if this Court does not enforce the Agreement should it rule on Defendants' Motion to Dismiss. Plaintiff admits his California-based conduct is time barred, and he has not provided timely allegations that might warrant the extraterritorial application of the FEHA. Dismissal is therefore proper.

## II. ARGUMENT

### A. Plaintiff Must Arbitrate His Claims

#### 1. The Acknowledgement disclaims contract formation relating to *policies*, not agreements

Plaintiff uses the terms "policies" and "agreements" interchangeably, but the language in the Acknowledgment makes an unmistakable distinction between the two. The Acknowledgment provides that the "*policies* . . . are not intended to create any contractual rights or obligations" (emphasis added). Plaintiff did not sign an arbitration "policy." He signed an "Agreement to Arbitration of Disputes," and the term is written in large, capitalized font. (Dkt. 26-1.) Furthermore, the final paragraph of the Acknowledgement says, "I acknowledge that I have carefully read the Handbook, including the Agreement to Arbitration of Disputes contained in this Handbook, and this Acknowledgment, and I understand and agree to the terms contained in each." Simply put, the Acknowledgement in no way undermines or revokes Plaintiff's signing of the Agreement.

Plaintiff cites *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781 (Cal. Ct. App. 2016) for support, but the language at issue in *Esparza* is different than the language in the Acknowledgement. The language in *Esparza* said "*this handbook is not intended to be a contract (express or implied) nor is it intended to otherwise create any legally enforceable obligations on the part of the Company or its employees*." *Id.* at 784. (emphasis in original.) In other words, the language in *Esparza* stated that the *entire handbook* was not meant to be a contract or otherwise create any legally enforceable obligations. Here, the Acknowledgment disclaims only *policies*, not agreements, and not the entire handbook.[1]

---

[1] *Mitri v. Arnel Management Co.*, 157 Cal. App. 4th 1164 (Cal. Ct. App. 2007), cited by Plaintiff, is also inapplicable. The *Mitri* court found that language in an employee handbook referencing an arbitration agreement outside of the handbook, which the plaintiffs were required to sign as a condition of employment (but never received) did not establish an intent to

When terms are clear and unambiguous, their intention must be followed. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000). "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous; it is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Id*. Here, the language in the Acknowledgement is unambiguous. A reasonable person taking into account that the Acknowledgement expressly applies only to "policies"—and not agreements—would not read it as being susceptible to more than one interpretation. A reasonable person would read the Acknowledgement as disclaiming contract formation solely with respect to policies in the handbook, not the Agreement Plaintiff signed.

**2.     Plaintiff cannot claim ignorance in an attempt to forgo his contractual obligation**

Plaintiff relies on his misinterpretation of the Acknowledgment to claim he did not know he was agreeing to arbitrate his claims. Yet, nothing in the plain language of the Acknowledgment suggests to Plaintiff that the Agreement was not intended to create a contractual obligation. Rather, as set forth above, the Acknowledgement states that the *policies* (not the agreements) in the handbook were not intended to create contractual obligations. Plaintiff cannot reasonably purport to have misunderstood he was agreeing to arbitrate claims when he signed an Agreement stating he was agreeing to arbitrate claims. Nor can he reasonably have thought that Gracenote would go to the trouble of asking him to sign the Agreement while simultaneously declaring such Agreement invalid.

**3.     California law permits Nielsen's enforcement of the Agreement**

The Agreement states that "any dispute with any party (*including the Company's affiliates, successors, predecessors, contractors, employees and agents*) that may arise . . . must be submitted for resolution by mandatory, binding arbitration." (Dkt. 26-1.) Plaintiff's Second Amended Complaint ("SAC") alleges the same claims against *both* Nielsen and Gracenote, as evidenced by his use of the term "Defendants" rather than "Defendant Gracenote" and "Defendant Nielsen" when referencing the parties. When Nielsen acquired Gracenote in 2017, it became Gracenote's parent company and an affiliate with rights under the Agreement, and Plaintiff's claims against Nielsen are therefore subject

---

form an arbitration agreement. 157 Cal. App. 4th at 1170–71. Here, by contrast, Plaintiff's obligation to arbitrate is established by the Agreement he received and signed, not by a handbook.

to the Agreement. *See Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (2003) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.") (internal quotes omitted.); *Ludlow v. Flowers Foods, Inc.*, No. 18CV1190-JO-JLB, 2022 WL 1787094, at *4 (S.D. Cal. June 1, 2022) ("The Court finds that Defendants are a beneficiary of the Arbitration Agreement as 'affiliated companies' and can thus enforce the arbitration provisions of the Arbitration Agreement."); *Adams v. AT & T Mobility, LLC*, 524 F. App'x 322, 324 (9th Cir. 2013). Even if the language is ambiguous, arbitration is favored. *See Adams v. AT&T Mobility, LLC*, 524 F. App'x 322, 324 (9th Cir. 2013) ("At the very least, the clause is ambiguous, and the Supreme Court has been clear that ambiguities as to the scope of the arbitration clause must be resolved in favor of arbitration.")

This outcome is consistent with the intent behind the Federal Arbitration Act, as courts in multiple circuits, including this one, have found. *See Fong v. U.S. Bancorp*, No. 222CV01291MCEKJN, 2023 WL 5311229, at *9 (E.D. Cal. Aug. 17, 2023) quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) ("As the Fifth Circuit aptly explained, '[i]f the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'") As Gracenote's parent company, Nielsen can enforce the Agreement against Plaintiff.

**4.    Defendants did not waive their right to enforce the Agreement**

"Waiver of a contractual right to arbitration is not favored," and, therefore, "any party arguing waiver of arbitration bears a heavy burden of proof." *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013). Plaintiff cannot meet this burden.

A party generally "acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). Here, Defendants did not act inconsistently with their right to arbitrate Plaintiffs claims, nor did they litigate the merits of this case for a prolonged period of time.

First, Defendants did not make an intentional decision to forego arbitration. Rather, Defendants filed their motion to compel arbitration promptly after discovering Plaintiff's Agreement. Plaintiff signed the Agreement in 2015 when he was hired by Gracenote. It is now nearly ten years later, the Gracenote office Plaintiff worked at is closed, there has been extensive turnover in Gracenote's workforce, and Nielsen keeps former Gracenote employee records offsite in their paper form. (Dkt. 26.) Nielsen had no knowledge of Plaintiff's employment file containing the Agreement and the file was not located until shortly before Defendants presented it to Plaintiff in April 2024.

Plaintiff cites *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011) for the notion that knowledge is imputed to the contract's drafter. In *Plows*, however, the court denied the motion to compel arbitration largely because the defendant filed a motion to remove, a motion to transfer venue, attended a scheduling conference, and conducted discovery. 812 F. Supp. 2d at 1066. Defendants have not engaged in similar conduct. Further, contrary to Plaintiff's argument, courts consider whether the party was the drafter *and* signatory to the agreement. Here, Nielsen was neither. *See Sywula v. Teleport Mobility, Inc.,* No. 21-CV-01450-BAS-SBC, 2023 WL 4630620, at *6 (S.D. Cal. July 18, 2023) ("Courts routinely impute a party's knowledge of an existing right to arbitrate when the party is *both a drafter and signatory* of the contract containing an arbitration clause.") (emphasis added.)

Moreover, although Defendants filed a motion to dismiss, such conduct does not constitute waiver. The Ninth Circuit in *Forbush v. City of Sparks*, No. 22-15079, 2023 WL 5670693, at *1 (9th Cir. Sept. 1, 2023), held that "[b]ecause the City did not take intentional acts inconsistent with its existing right to compel arbitration by filing a combined motion to dismiss and motion to compel arbitration, there is no waiver." (internal quotations omitted.) Thus, Defendants' limited conduct does not constitute waiver.

Second, Defendants have not actively litigated the merits of the case at all, let alone for a prolonged period of time. Plaintiff filed a complaint, a first amended complaint, and a second amended complaint. Defendants filed only a motion to dismiss and the instant Motion—they did not file an answer or take discovery. This case is dissimilar to the cases Plaintiff cites. In *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988), the defendant actively litigated the case for

*over two years* before moving to compel arbitration. In *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. App'x. 663, 664 (9th Cir. 2014), the defendant waited eleven months and conducted discovery before moving to compel arbitration. Here, less than six months passed between Plaintiff filing his Complaint and Defendants filing their Motion.

Plaintiff's claims against Defendants are subject to the valid and enforceable Agreement. Defendants did not waive their right to arbitrate these claims, and this Court therefore should compel Plaintiff to uphold his contractual obligations.

### B.  Plaintiff's FEHA Claims are Untimely.

#### 1. The allegations on the face of the SAC show an obvious time bar to seeking relief under the FEHA, and dismissal is appropriate

"[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) quoting *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir.2013); s*ee also Jones v. Bock*, 549 U.S. 199, 215, (2007) (holding the same); *Goddard v. Google Inc.*, 640 F.Supp.2d 1193, 1199 n. 5 (N.D.Cal.2009) (noting that "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the [c]omplaint."). Here, Defendants can properly seek, in the alternative, dismissal of Plaintiff's FEHA claims based on the statute of limitations affirmative defense.[2]

The allegations on the face of Plaintiff's SAC establish that the statute of limitations ran on Plaintiff's FEHA claims. Plaintiff alleges he was demoted in 2017 and moved out of California in 2019. (SAC ¶¶ 6, 16.) Under either the one-year statute of limitations or the three-year statute of limitations, he had until the end of 2022 at the latest to file his charge with the CRD. He alleges in his SAC that he filed his charge on November 22, 2023. (SAC ¶ 98.) It is clear from the face of the SAC that the statute of limitations ran.

Plaintiff also alleges he—a Washington resident—was terminated by Adam Levy and Sandra Sims-Williams in 2023. (SAC ¶ 50.) This termination by New York-based and Massachusetts-based

---

[2] Plaintiff cites to *ASARCO, LLC* for the notion that dismissal based on a statute of limitations defense is inappropriate, but that case involved a different legal issue. The question in *ASARCO* was whether an amended claim could survive a statute of limitations bar by relating back to the original complaint. Here, the issue is whether the SAC, on its face, pleads facts placing Plaintiff's claims outside the relevant statute of limitations (it does).

employees is not subject to California law. Such allegations therefore cannot salvage Plaintiff's California FEHA claims from the operative statute of limitations.

### 2. Plaintiff admits conduct prior to 2020 is untimely

Plaintiff admits that any conduct prior to November 22, 2020 is untimely. *See* Opposition at 18 ("Under the three-year limitations period, Franks timely challenges all unlawful practices that occurred on or after November 22, 2020.") This concession is fatal to Plaintiff's argument, as the facts Plaintiff pleads in support of his California FEHA claim either (1) took place in California prior to November 22, 2020; or (2) took place after Plaintiff moved from California. Plaintiff thus concedes his California FEHA claims are time barred.

### 3. Plaintiff cannot allege the elements necessary to apply the continuing violation doctrine.

The continuing violation doctrine, upon which Plaintiff relies, applies only where the otherwise time-barred events (1) are "sufficiently similar in kind" to the events occurring within the limitations period, (2) occurred with "sufficient frequency," and (3) have not "acquired a degree of permanence." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001). Plaintiff at a minimum has failed to meet his burden of establishing the third element, and the continuing violation doctrine therefore does not apply.[3]

As an initial matter, by neglecting to address the third element in his Opposition, Plaintiff concedes he cannot establish it. *See California Grocers Ass'n v. City of Santa Ana*, No. SACV2100705DOCJDEX, 2021 WL 4439092, at *2 (C.D. Cal. June 30, 2021) quoting *Ulikhanova v. County of Los Angeles*, 2018 WL 10111334, at *7 (C.D. Cal. 2018) ("Plaintiff did not address this point in its opposition to the motion. This Court accordingly recognizes Plaintiff's silence as a concession."); *Maciora v. PMB Helin Donovan LLP*, No. C16-295-RSM, 2016 WL 3916992, at *3 (W.D. Wash. July 20, 2016) ("Defendants point out that [plaintiff] failed to address their arguments [] and thus concedes the point.") (internal quotations omitted.)

Plaintiff nonetheless claims there was a continuing violation because he suffered an alleged discriminatory demotion in 2017 and then was assigned work throughout 2022 commensurate with

---

[3] Defendants do not concede that Plaintiff established the first two elements. However, given Plaintiff's failure to address the third element, discussion of the first two elements is unnecessary.

the alleged lower role. This fact pattern is insufficient to establish the degree of permanence element necessary to apply the continuing violation doctrine. *See Flynt v. Shimazu*, 940 F.3d 457, 463 (9th Cir. 2019) ("A mere continuing impact from past violations is not actionable if the violations lie outside the statute of limitations period.") (internal quotations omitted.); *Milligan v. Thompson*, 90 Wash. App. 586, 595 (1998) ("as the trial court correctly concluded, the demotion was the type of permanent decision that should have alerted [plaintiff] to assert his rights.").

Moreover, courts have repeatedly held that demotions reach permanence when the position is filled or the decision is announced—not, as Plaintiff alleges, when the consequences are felt. In *Zeinali v. Raytheon Co.*, No. 07CV1852-MMA CAB, 2011 WL 2580688, at *3 (S.D. Cal. June 29, 2011), the plaintiff alleged he was denied multiple promotions over several years due to his race. Like Plaintiff, he "suspected discriminatory animus at the time he was denied a promotion." *Id*. He argued the continuing violations doctrine applied to the series of related adverse employment events. *Id*. The court, however, found that the eight non-promotions "look[ed] much more like a collection of isolated employment decisions," further stating "[b]ut even assuming the conduct was sufficiently similar and frequent enough to constitute a single course of conduct, the situation had reached permanence when [the defendant] did not promote [plaintiff] and instead filled the positions with other applicants." *Id*.

Plaintiff claims throughout his SAC and Opposition that he believed—at the time of the alleged demotion—that it was racially discriminatory. This also prevents application of the continuing violation doctrine. *See Antonius v. King Cnty.*, 153 Wash. 2d 256, 263 (2004) ("A serial continuing violation could not prevail if the plaintiff was or should have been aware that he or she was being unlawfully discriminated against while the earlier acts, now untimely, were taking place.") (internal quotations omitted.); *Thompson v. C & H Sugar Co.*, No. 12-CV-00391 NC, 2014 WL 1266804, at *4 (N.D. Cal. Mar. 24, 2014) ("Next, defendants argue that because each denied promotion was a discrete act, the promotions acquired sufficient permanence. This would be correct, had [plaintiff] known or had reason to know that she was denied the promotions based on her race."); *Burrell v. Cnty. of Santa Clara*, No. 11–cv–04569 LHK, 2013 WL 2156374, at * 15 (N.D.Cal. May 17, 2013) (continuing violation doctrine did not apply where plaintiff "suspected that she was being discriminated against based on her race" for several years before denied promotions). Because Plaintiff believed he was

1  discriminated against when he was demoted in 2017, that is when his claim reached permanence and,
2  by extension, when the statute of limitations on that claim began to run. *See Garden v. Hawley*, 104
3  F. App'x 2, 4 (9th Cir. 2004) (The continuing violation doctrine did not salvage a demotion claim
4  because it was an independently actionable, discrete act.).

5  Plaintiff further claims that the continuing violation doctrine applies to his allegation he was
6  paid less. This claim similarly runs afoul of the degree of permanence element. In *Aryeh v. Canon Bus.*
7  *Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013), the California Supreme Court determined the continuing
8  violations doctrine did not apply in the context of unfair pay. The Supreme Court found that because
9  the complaint identified a series of discrete, independently actionable wrongs, and because it was not
10 a case in which a wrongful course of conduct "became apparent only through the accumulation of a
11 series of harms,"—evidenced by the fact that the plaintiff was "aware of, recognized as wrongful, and
12 was recording" the defendant's unfair acts for years prior—the continuing violation doctrine did not
13 apply. *Aryeh*, 55 Cal. 4th at 879–80. The same facts are present here. Plaintiff's SAC makes clear he
14 was aware of every action he alleges was discriminatory, and further that he recorded and complained
15 about such actions. *Cf. Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1058 (2005) (applying the
16 continuing violations doctrine where "some or all of the component acts might not be individually
17 actionable" and the plaintiff "may not yet recognize" the acts "as part of a pattern.")

18 **4.  California does not have a "paycheck accrual rule."**

19 There is no California equivalent to the Lilly Ledbetter Fair Pay Act. Plaintiff nonetheless
20 improperly tries to recast the concept captured by the federal act as a state rule (which he names the
21 California paycheck accrual rule). Plaintiff's argument is unsupported by precedent.

22 The case cited by Plaintiff in support is distinguishable. In *Carroll v. City & Cnty. of S.F.*, 41
23 Cal. App. 5th 805, 813 (Cal. Ct. App. 2019), *as modified on denial of reh'g* (Cal. Ct. App. Nov. 27,
24 2019), the defendant explicitly advertised that it used an age-based formula to calculate the plaintiff's
25 retirement benefit. The formula paid *similarly situated* individuals differently because of age. The
26 plaintiff became aware of the formula on July 20, 2017 and filed her DFEH complaint shortly after.
27 41 Cal. App. 5th at 811. The court found under those facts that "an unlawful event occurred each time
28 plaintiff received a discriminatory payment, such that a new limitations period applies to each

1   allegedly discriminatory check." *Id.* at 813.

2         Here, Plaintiff does not allege—nor could he—that he is paid less than non-Black employees
3   in roles similar to his—a critical element of a discriminatory pay claim. Rather, he alleges he was paid
4   less than non-Black employees in roles *different than his*. These facts place Plaintiff's argument
5   squarely outside the bounds of the limited holding in *Carroll*.

6         Plaintiff's claim is thus subject to the baseline rule that the statute of limitations does not restart
7   with each allegedly discriminatory paycheck for purposes of the continuing violations doctrine. *See*
8   *Alch v. Superior Court*, 122 Cal. App. 4th 339, 370, n.21 (2004) (rejecting the notion that the violation
9   was renewed with each paycheck, concluding that a neutral practice which gives effect to prior
10  discrimination is not a continuing violation).

11        **C.**    **Plaintiff Fails To Bring His Claims Within The Purview Of California Law**

12        Plaintiff claims that, as a remote employee working in Washington, he can bring a claim
13  against Defendants under California law simply because his manager (who played no role in any
14  timely alleged wrongful conduct) worked there. Tellingly, Plaintiff cites no cases for this proposition.
15  Nor does Plaintiff cite any cases applying FEHA when an individual suffered no actual harm in
16  California.

17        Plaintiff admits conduct prior to 2020 is time barred (Opposition at 18), including the alleged
18  2017 demotion and assignment of "menial" tasks described in the SAC. As shown above, the demotion
19  was a discrete act, and Plaintiff continuing to carry out the job duties he was previously assigned does
20  not bring the conduct within the statute of limitations. It is of no significance where Plaintiff alleges
21  his "official work location" was. What *is* significant is Plaintiff did not suffer any harm in California
22  after (or during) 2020, during which time he did not travel to California due to the COVID-19
23  pandemic.

24        Plaintiff's reliance on *Roger-Vasselin v. Marriott International, Inc.*, No. 04-cv-4027, 2006
25  WL 2038291 (N.D. Cal. July 19, 2006), *Rulenz v. Ford Motor Company (Rulenz II)*, No. 10-cv-1791,
26  2014 WL 50807 (S.D. Cal. Jan. 7, 2014) and *Sims v. Worldpac Inc.*, No. 12-cv-5275, 2013 WL 663277
27  (N.D. Cal. Feb. 22, 2013) is misplaced.

28

In *Roger-Vasselin*, the defendant did not challenge plaintiff's allegation that his California-based manager engaged in wrongful conduct within the statute of limitations. Defendants do challenge that here, as the only California-based conduct Plaintiff's manager could have been involved in is the alleged demotion and assignment of "low level tasks" in 2017, which are outside the statute of limitations.[4]

In *Rulenz*, the plaintiff performed a significant amount of her work assignments in California and paid California income taxes. She also maintained a California residence and driver's license and received paychecks via direct deposit into a California bank account. The court denied the motion to dismiss the FEHA claims based on these facts. *Rulenz*, 2014 WL 50807 at *5. No such facts exist here. Plaintiff performed *none* of his work assignments in California after his 2019 relocation to Washington. Plaintiff has not alleged he maintained a California residence or driver's license or paid California income taxes after he moved.

In *Sims*, the California-based executives were physically in California when they made the termination decision and called plaintiff to inform him of the termination. The court did not focus on the location of the alleged protected activity, and neither should this Court. Here, non-California based-employees terminated Plaintiff while physically outside of California.

Finally, Plaintiff's request that this Court should "infer" that his California-based manager participated in ongoing, discriminatory refusal to select Plaintiff for advancement is insufficient. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

Plaintiff must—but has not—alleged any discriminatory conduct that (1) falls within the FEHA statute of limitations period **and** (2) caused harm to him in California. Plaintiff lived in Washington during the statutory period, and thus any alleged harm was suffered there, not in California. Plaintiff's California FEHA claims should therefore be dismissed.

---

[4] Even if the Court finds the unpublished *Novak* order Plaintiff cites persuasive, Plaintiff does not allege his job duties were *replaced* by "menial" work. It is unclear whether Plaintiff also continued to do other assignments.

### III. CONCLUSION

Defendants request this Court compel Plaintiff to arbitration and stay the proceedings, or, in the alternative, dismiss Counts VII and VIII with prejudice.

I certify that this memorandum contains 4,196 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
Victoria E. Ainsworth, WSBA No. 49677
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com
tainsworth@corrcronin.com

Cardelle Bratton Spangler, *Admitted Pro Hac Vice*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600 Phone
(312) 558-5700 Fax
CSpangler@winston.com

Whitney Williams, *Admitted Pro Hac Vice*
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
(213) 615-1700 Phone
(213) 615-1750 Fax
WhWilliams@winston.com

*Attorneys for Defendants The Nielsen Company (US), LLC and Gracenote, Inc.*