UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUSTIN FRANKS,

                Plaintiff,

    v.

THE NIELSEN COMPANY et al,

                Defendants.

Case No. 3:23-cv-06150-TMC

ORDER GRANTING DEFENDANTS'
MOTION TO COMPEL ARBITRATION

This case arises from Plaintiff Justin Franks' former employment with Defendants Gracenote, Inc. and The Nielsen Company (US), LLC. Franks alleges that despite his successful tenure at Gracenote, after it was purchased by Nielsen, Nielsen discriminated against him based on his race and retaliated against him for complaining of discrimination. *See* Dkt. 21. Defendants now move to compel arbitration or, in the alternative, to dismiss this case. Dkt. 24. Because the arbitration agreement between Gracenote and Franks is enforceable, the Court GRANTS Defendants' motion to compel arbitration.

## I.    BACKGROUND

In 2015, Gracenote hired Franks to manage an information technology team in California. *See* Dkt. 21 ¶¶ 6–7. During in-person onboarding, Gracenote human resources staff presented Franks with an employee handbook, a form for Franks to acknowledge receipt of the employee

handbook, and an agreement to arbitration of disputes. *See* Dkt. 26-1, 26-2; Dkt. 34 ¶¶ 6–7. On October 12, 2015, at the end of the onboarding session, Franks signed the acknowledgment form (Dkt. 34-1) and separately signed the agreement to arbitration. Dkt. 26-1 at 2; Dkt. 34 ¶ 5. Gracenote's new employee checklist recorded HR's receipt of the employee handbook acknowledgment form and separately noted Frank's submission of his signed arbitration agreement. *See* Dkt. 26-2 at 2. Franks states in his declaration that he "did not understand that any portion of the Employee Handbook would be legally binding" and would not have waived any of his rights unless he was "under duress, coercion, or similar." Dkt. 34 ¶¶ 8–9. According to the checklist, Franks had a week to review, sign, and return the listed documents. *See* Dkt. 26-2 at 2.

The acknowledgment form specified that Franks understood that any "*policies* contained in the [Employee] Handbook are not intended to create any contractual rights or obligations [. . .] *with the exception of* the Company's at-will employment and binding arbitration policies." Dkt. 34-1 at 2 (emphasis added). The form also specified that Franks had "carefully read the Handbook, including the Agreement to Arbitration of Disputes." *See id.* The arbitration agreement specified it applied to Gracenote, Franks, and any of Gracenote's "affiliates, [and] successors" and "applies to all statutory, contractual and/or common law claims arising from employment with the Company including, but not limited to, claims arising under Title VII of the Civil Rights Action [*sic*] of 1964" and the California FEHA. *See* Dkt. 26-1 at 2.

According to the operative complaint, after starting work, Franks grew his department until Nielsen acquired Gracenote in 2017. Dkt. 21 ¶ 8, 10. Nielsen changed Franks' title and work responsibilities. *Id.* ¶ 14. In 2019, Franks moved from California to Washington. *Id.* ¶ 92. Franks believed that Nielsen sidelined and discriminated against him due to his race. *See id.* ¶¶ 25, 29–37. Nielsen laid off Franks in March 2023. *Id.* ¶ 50. On November 22, 2023, Franks

filed a discrimination complaint with the California Department of Fair Employment & Housing (*id.* ¶ 98) and filed his complaint before the Court on November 12, 2023, alleging, among other things, race discrimination and retaliation under the California Fair Employment and Housing Act ("FEHA"). *See* Dkt. 1.

On February 16, 2024, Defendants moved to dismiss, arguing that Franks' FEHA claims were time-barred and had insufficient nexus to California. Franks subsequently amended his complaint twice. Dkt. 15, 21. On May 3, Defendants moved to compel arbitration, or in the alternative, to dismiss this case. Dkt. 24. All relevant briefing has been filed. Dkt. 33, 34.

## II.   LEGAL STANDARDS

### A.   Motions to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted). The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.    Federal Arbitration Act**

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). While there is an "emphatic federal policy in favor of arbitral dispute resolution," *KPMG v. Cocchi*, 565 U.S. 18, 21 (2011), the Court must make the threshold determination that a valid contract was formed before ordering arbitration, *see Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008).

**C.    California Law Governs**

Courts apply state contract law to determine whether the parties formed a valid agreement to arbitrate. *Lowden*, 512 F.3d at 1217 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The parties agree that California contract law applies. *See* Dkt. 24; Dkt. 33 at 8. "California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97, 6 P.3d 669 (2000). Under California law, "an arbitration agreement may only be invalidated for the same reasons as other contracts." *Id.* at 98.

The formation of a valid arbitration agreement under California law requires "four essential elements: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." *See, e.g.*, *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 937 (N.D. Cal. 2019) (citing Cal. Civ. Code § 1550) (cleaned up). And a "party who is bound by

a contract is bound by all its terms, whether or not the party was aware of them," such that the party "cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Id*. Relatedly, then, where an arbitration agreement explicitly states that it extends to another party (such as a corporate parent or successor) then the specified party also "would receive the benefit of being able to enforce the arbitration agreement." *See Hicks v. Utiliquest, LLC*, No. 2:24-CV-00911-DJC-AC, 2024 WL 3011242, at *3 (E.D. Cal. June 11, 2024).

### III.    DISCUSSION

**A.    Defendants are party to, and have not waived their right to enforce, the arbitration agreement with Franks.**

As an initial matter, Franks contends Nielsen cannot move to compel arbitration because it "is a third-party beneficiary" without "any right to enforce the Arbitration Policy." Franks' argument is incorrect. He also argues that the arbitration agreement does not apply to his claims that "arise out of [his] employment by Nielsen rather than Gracenote." *See* Dkt. 33 at 7, 13–14. However, a "party who is bound by a contract is bound by all its terms" (*Tabas*, 401 F. Supp. 3d at 937), including whether the contract can benefit a third party (*See Hicks*, 2024 WL 3011242, at *3 (citing *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1162 (9th Cir. 2010))). "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract." *Id*. Nielsen's acquisition of Gracenote in 2017 (*see* Dkt. 34 ¶ 8, 10; *see also* Dkt. 12, 14), and Franks' continued employment by Gracenote as an entity owned by Nielsen, renders Nielsen a successor to Gracenote. And the arbitration agreement between Franks and Gracenote expressly states that the agreement applies to Gracenote, Franks, and any of Gracenote's "affiliates, [and] *successors*." Dkt. 26-1 at 2 (emphasis added). Because the arbitration agreement was validly formed and is enforceable (*see infra* Sec. III.B.), Nielsen can enforce the agreement as an intended beneficiary—Gracenote's

"successor." *See Hicks*, No. 2:24-CV-00911-DJC-AC, 2024 WL 3011242, at *3.

Franks also asserts that "Defendants' time to raise the arbitration provision has passed" because several months have gone by since he filed his initial complaint and Defendants have attempted to "eliminate some of [Franks'] claims on the merits." Dkt. 33 at 16–17. There is an "emphatic federal policy in favor of arbitral dispute resolution," *KPMG*, 565 U.S. at 21, and this case is early on in its proceedings: no discovery has taken place and Defendants moved to compel arbitration within five months of Franks' initial complaint (*cf.* Dkt. 1, 24), and just one month after his second amended complaint (Dkt. 21).

Based on the totality of the parties' actions in this lawsuit, the Court determines that Defendants did not waive their right to compel arbitration. In each of the cases that Franks cites, the parties were significantly further along in the process of litigation. *See, e.g.*, *Van Ness Townhouses v. Mar Ind. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (where securities firm failed to move for arbitration until litigation had been ongoing for two years); *Kelly v. Pub. Util. Dist. No. 2*, 552 F. App'x 663, 664 (9th Cir. 2014) (where defendant "waited eleven months after the lawsuit was filed to demand arbitration" while conducting discovery and filing a motion for preliminary injunction); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066 (C.D. Cal. 2011) (where defendant had served numerous interrogatories and subpoenaed plaintiff's current employer and negotiated a protective order from the court).

**B.    The parties' arbitration agreement was validly formed and is enforceable.**

An arbitration agreement is validly formed under California law if the parties: (1) are capable of contracting; (2) mutually gave consent; (3) had a lawful object; and (4) had sufficient cause or consideration. *See Tabas*, 401 F. Supp. 3d at 937. Additionally, any party bound by such an arbitration agreement "is bound by *all* its terms, whether or not the party was aware of them," and the party "cannot avoid the terms of a contract on the ground that he or she failed to read it

before signing." *Id.* (emphasis added). In this case, Franks validly formed his arbitration agreement with Defendants. Franks has not alleged that he was incompetent or unable to understand the contract, only that he "did not understand that any portion of the Employee Handbook [containing the arbitration agreement] would be legally binding" (Dkt. 34 ¶ 8) and was later "stunned and had no recollection" of the agreement. *Id.* ¶ 10. While Franks claims he would not waive any rights unless under duress or coercion, he has presented no evidence that he was under any undue pressure to assent to the arbitration agreement. Instead, here, the parties were presumably competent and capable of contracting: Franks was given a week to review and sign the arbitration agreement (*see* Dkt. 26-2 at 2) and both sides consented to the agreement.

Franks signed a separate document specifying that he had "carefully read the [Employee] Handbook, including the Agreement to Arbitration of Disputes." Dkt. 34-1 at 2. That same document stated that Franks understood that the "policies contained in the [Employee] Handbook are not intended to create any contractual rights or obligations [. . .] *with the exception of* the Company's at-will employment and binding arbitration policies." *Id.* (emphasis added). Any party bound by a contract, such as an arbitration agreement, "is bound by *all* its terms, whether or not the party was aware of them," and the party "cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Id.* Here, Franks specifically acknowledged that he had carefully read the arbitration agreement which specified it applied to Gracenote, Franks, and any of Gracenote's "affiliates, [and] successors" and "to all statutory, contractual and/or common law claims arising from employment with the Company including, but not limited to, claims arising under Title VII of the Civil Rights Action [*sic*] of 1964" and the California FEHA. *See* Dkt. 26-2 at 2. The parties had a lawful object and cause to enter into the arbitration agreement: Franks' employment with Gracenote. Accordingly, all elements for a valid arbitration agreement are met under California law. *See Tabas*, 401 F. Supp. 3d at 937.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

"[W]hen examining the scope of an arbitration agreement, [a]s with any other contract dispute, [the Court] first look[s] to the express terms [of the parties' agreement]." *United States ex rel. Welch v. My Left Foot Children's Therapy*, LLC, 871 F.3d 791, 796 (9th Cir. 2017). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The parties' arbitration agreement expressly states that it "applies to all statutory, contractual and/or common law claims arising from employment with the Company including, but not limited to, claims arising under Title VII of the Civil Rights Action [*sic*] of 1964, the Age Discrimination in Employment Act; the Equal Pay Act of 1963; the California Fair Employment and Housing Act; California Labor Code sections 200, et seq., 970 and 1050, et seq.; the Fair Labor Standards Act; and the Americans with Disabilities Act." Dkt. 26-2 at 2. This list covers the claims in Franks' operative complaint. *See* Dkt. 21 at 16–21 (stating claims under the California FEHA, Title VII, and federal and Washington statutes). The scope of the agreement creates no doubt as to arbitrability in this case.

## IV.    CONCLUSION

As discussed above, because the parties' arbitration agreement was validly formed and is enforceable as to Franks' claims, the Court GRANTS Defendants' motion to compel arbitration. Dkt. 24. Franks must initiate arbitration if he wishes to pursue his claims against Defendants. This case is STAYED pending the completion of arbitration proceedings. The parties are directed to file a status report within 14 days of completing arbitration.

Dated this 6th day of September, 2024.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION - 8